# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FO2GO LLC, <br><br>         Plaintiff, <br><br> v. <br><br> INSTAGRAM, LLC <br><br>         Defendant. | C.A. NO. 1:15-CV-00093-RGA <br><br> **JURY TRIAL DEMANDED** |

## DEFENDANT INSTAGRAM, LLC'S MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(B)(6)

## Table of Contents

Page

I. NATURE AND STAGE OF PROCEEDINGS ................................................................... 1

II. SUMMARY OF ARGUMENT ........................................................................................ 1

III. STATEMENT OF FACTS ALLEGED ............................................................................ 2

IV. LEGAL STANDARDS ................................................................................................... 4

    A. Legal Standards

    B. Functional Claiming Using "Means-Plus-Function" Limitations

V. ARGUMENT ................................................................................................................... 7

A. THE '651 PATENT'S CLAIMS ARE INVALID AS INDEFINITE ...................................... 7

    1. "Server Control Means" is a Means-Plus-Function Limitation ............................ 7

    2. The Specification Does Not Disclose Any Algorithm for Performing the Function of "Parsing Said Recipient Code from Each Said Message " ................. 7

    3. Dependent Claims 3-5 Are Likewise Indefinite ..................................................... 9

VI. CONCLUSION ................................................................................................................ 9

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008)..................................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................4

*Augme Techs., Inc. v. Yahoo! Inc.*,
  755 F.3d 1326 (Fed. Cir. 2014)..................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................................4

*Blackboard, Inc. v. Desire2Learn, Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009)...............................................................................................7, 8

*Datamize, LLC v. Plumtree Software, Inc.*,
  417 F.3d 1342 (Fed. Cir. 2005)..................................................................................................9

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012)..................................................................................................5

*ePlus, Inc. v. Lawson Software, Inc.*,
  700 F.3d 509 (Fed. Cir. 2012)............................................................................................7, 8, 9

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
  673 F.3d 1361 (Fed. Cir. 2012)..................................................................................................6

*Finisar Corp. v. DirecTV Grp., Inc.*,
  523 F.3d 1323 (Fed. Cir. 2008)...............................................................................................6, 8

*Function Media, LLC v. Google, Inc.*,
  708 F.3d 1310 (Fed. Cir. 2013)..................................................................................................6

*Harris Corp. v. Ericsson Inc.*,
  417 F.3d 1241 (Fed. Cir. 2005)..................................................................................................6

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*,
  732 F.3d 1376 (Fed. Cir. 2013)..................................................................................................6

*Keithley v. Homestore.com, Inc.*,
  636 F. Supp. 2d 978 (N.D. Cal. 2008) .......................................................................................5

*Kinetic Concepts, Inc. v. Blue Sky Med. Grp.*,
    554 F.3d 1010 (Fed. Cir. 2009) .......................................................................................... 4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) ................................................................................................ 4, 9

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
    545 F.3d 1359 (Fed. Cir. 2008) ..................................................................................... 6, 7

*Noah Sys., Inc. v. Intuit Inc.*,
    675 F.3d 1302 (Fed. Cir. 2012) ..................................................................................... 6, 7

*In re Packard*,
    751 F.3d 1307 (Fed. Cir. 2014) ......................................................................................... 4

*Personalized Media Commc'ns, LLC v. Int' Trade Comm'n*,
    161 F.3d 696 (Fed. Cir. 1998) ........................................................................................... 5

*Robert Bosch, LLC v. Snap-On Inc.*,
    769 F.3d 1094 (Fed. Cir. 2014) ......................................................................................... 6

*In re TLI Commc'ns LLC Patent Litig.*,
    ___ F. Supp. 3d ____, 2015 WL 627858 (E.D. Va. Feb. 6, 2015) .............................. 5, 8

*Triton Tech of Texas, LLC v. Nintendo of Am., Inc.*,
    753 F.3d 1375 (Fed. Cir. 2014) ..................................................................................... 6, 8

**Statutes**

35 U.S.C. § 112 ................................................................................................... 1, 4, 5, 7, 9

Section 112(b) of the Patent Act ................................................................................................ 4

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(6) ................................................................................. 1, 4, 5, 6

**I.    NATURE AND STAGE OF PROCEEDINGS**

On January 27, 2015, plaintiff FO2GO LLC ("FO2GO") filed 15 separate actions in this district alleging infringement of U.S. Patent No. 7,173,651 ("the '651 patent"), including the present action. Defendant Instagram, LLC ("Instagram") respectfully submits this brief in support of its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because all claims of the '651 patent are invalid as indefinite under 35 U.S.C. § 112.

**II.    SUMMARY OF ARGUMENT**

1.    This motion presents an opportunity for early resolution of the FO2GO cases pending in this district. The patent-in-suit contains two independent claims, both identically reciting a "server control means for parsing said recipient code from each said message." The specification discloses no algorithm whatsoever corresponding to this means-plus-function limitation. The specification devotes one sentence to the claimed "parsing" function, which parrots the claimed function but provides no guidance as to how the parsing is carried out.

2.    Instagram has brought this motion under Rule 12(b)(6) because the Court should address this threshold invalidity issue at the outset of this litigation. As we will explain below, the indefiniteness issue addressed by this motion presents a clear and straightforward question of law for the Court that does not require discovery. There is no reason for the parties to engage in extensive discovery or the Court to engage in a full construction if, as Instagram believes, the straightforward legal issue presented herein is dispositive of the entire litigation. Because all claims of the '651 patent are invalid as indefinite under 35 U.S.C. § 112(f) for failure to disclose a structure and algorithm corresponding to the limitation "server control means for parsing said recipient code from each said message" in both independent claims, FO2GO's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III.  STATEMENT OF FACTS ALLEGED

The '651 patent, entitled "Apparatus and System for Prompt Digital Photo Delivery and Archival" purports to disclose "digital cameras which include a radio frequency (RF) transceiver for transmitting digital photos to a remote destination according to user preferences."  ('651,[1] 1:14-16.)  The digital photo delivery system described in the patent includes two primary components.  First, the system includes a "digital camera apparatus" that wirelessly transmits messages with digital photos to a server.  ('651, 12:36-40 ("In the preferred embodiment a separate processing loop, as shown in FIG. 18, is invoked to transmit messages from them [sic; the] wireless device to the server.  This allows users to quickly take several pictures without waiting for the prior picture to be transmitted.").  In one embodiment, "[t]he message includes an account ID, a recipient code (nickname), and at least one digital image created by the digital camera."  ('651, 4:60-62.)

A second component of the claimed photo delivery system is a server, which receives and processes the messages sent by the digital camera apparatus.  ('651, 13:36-38 ("FIG. 20 shows a process flow chart of how the server processes messages received from a wireless camera device.").)  One of the functions that the server performs is to **parse** the message to extract certain information that was included with the message, such as the "**recipient code**."  As explained in the '651 specification:

> At block **544** the server receives a message, <u>parses out information such as account number, image, audio data, date, time, classification, location, and recipient code which is included in the message</u>, saves this in a server memory for future access and in a holding area designated for this

---

[1]  All citations to "('651, xx:yy)" refer to columns and lines of the '651 patent specification.  A copy of the '651 patent is attached as Exhibit A to the "Original Complaint for Patent Infringement" filed on January 27, 2015.  (ECF No. 1, Ex. A.)

> account, and if a path is associated with the recipient code saves the message at that location.

('651, 13:38-44 (emphasis added).) The specification makes clear that both of these components (*i.e.* the digital camera and the server) can be implemented using general purpose computer components. ('651, 6:59-61 ("[T]he wireless camera device **110** and the server **140** may be programmatically implemented by using many general purpose hardware components.").)

The '651 patent has only five claims, two of them (claims 1 and 2) being independent. Both of these claims recite a means-plus-function limitation relating to "parsing out" the "recipient code" as described above. Representative claim 2, for example, recites in full:

> 2. Digital photo processing system comprising:
>
> at least one wireless digital camera apparatus, wherein each said apparatus includes a processor, a memory, and a destination address and one or more previously defined recipient codes stored in said memory; user interface connected to said processor for at least displaying one or more said recipient codes and receiving signals indicating user selection of a displayed recipient code; a digital camera connected to said processor for capturing one or more digital images in response to signals from said user interface; a RF communications device connected to said processor; and processor control means, responsive to signals received from said user interface, for transmitting a message, including at least said selected recipient code and one said digital image, to said destination address via said RF communications device; and
>
> a server associated with said destination address and responsive to messages received at said destination address from each said wireless digital camera apparatus; a database storing account configuration data including recipient code data; a server communication device; **and server control means for parsing said recipient code from each said message**, retrieving from said database account configuration data that is associated with said recipient code, and processing each said message according to said account configuration data.

('651, 16:7-34 (Claim 2) (emphasis added).) The other independent claim (claim 1) identically recites a "server control means for parsing said recipient code from each said message."

3

As explained in more detail below, the specification discloses no algorithm for carrying out the function of "parsing said recipient code from each said message." The sole disclosure in the specification pertaining to the claimed "parsing" function is the sentence block-quoted above that states the server "<u>parses out information such as . . . [the] recipient code which is included in the message</u>." ('651, 13:39-41 (emphasis added).) The specification discloses no algorithm for doing this.

## IV. LEGAL STANDARDS

### A. Legal Standards

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The definiteness requirement is codified in Section 112(b) of the Patent Act, which states that a patent specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the [applicant] regards as his invention." 35 U.S.C. § 112(b). A claim that fails to comply with the definiteness requirement is invalid. *See, e.g., Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124-25 (2014). A ruling on indefiniteness presents a question of law for the district court. *See In re Packard,* 751 F.3d 1307, 1311 (Fed. Cir. 2014) (quoting *Kinetic Concepts, Inc., v. Blue Sky Med. Grp., Inc.,* 554 F.3d 1010, 1022 (Fed. Cir. 2009) ("Indefiniteness, as a subset of claim construction, is a question of law which this court reviews without deference.").

In the present case, it is appropriate to rule on the indefiniteness issue at this time because it is a narrow and potentially case dispositive legal issue. *See, e.g., In re TLI Commc'ns LLC Patent Litig.*, ___ F. Supp. 3d ____, 2015 WL 627858, at *26 (E.D. Va. Feb. 6, 2015) (granting Rule 12(b)(6) motion to dismiss based on patent's failure to disclose algorithm for means-plus-function limitation under § 112(f) grounds); *see also Keithley v. Homestore.com, Inc.*, 636 F. Supp. 2d 978, 995 (N.D. Cal. 2008) ("This conclusion is a legal one, based on this Court's 'performance of its of its duty as the construer of patent claims'… no factual findings are required.") (citing *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n,* 161 F.3d 696, 705 (Fed. Cir. 1998)). The indefiniteness issue presented by this motion will not only obviate the need for the parties to conduct discovery, but will avoid the waste of resources required by a full claim construction proceeding. This is particularly significant considering the length of the two independent claims, which will likely generate a significant number of claim construction disputes as this case proceeds.

### B. Functional Claiming Using "Means-Plus-Function" Limitations

Section 112(f) of the Patent Act allows a patentee to state a claim element as a "means" for performing a specified function without specifying the structure in the claim itself. *See* 35 U.S.C. § 112 (f) (a claim element "may be expressed as a means … for performing a specified function without the recital of structure . . and such claim shall be construed to cover the corresponding structure … described in the specification …."). But the right to use "means-plus-function" claiming is not unrestricted. *See, e.g.*, *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1328 (Fed. Cir. 2012) ("[S]ection 112, paragraph 6 incorporates a deliberate *quid pro quo*."). "In exchange for using this form of claiming, the patent specification must disclose with sufficient particularity the corresponding structure for performing the claimed function and clearly link that

5

structure to the function." *Triton Tech of Texas, LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1378 (Fed. Cir. 2014).

When the function recited in the claim is performed by a processor or other general purpose computing equipment (as is the case here),[2] the specification must identify the physical structure <u>and</u> an algorithm in the specification for performing that function. *Triton Tech,* 753 F.3d at 1378. The law therefore "restricts computer-implemented means-plus-function terms to the algorithm disclosed in the specification." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005). If the specification discloses no such algorithm, the claim is invalid for indefiniteness. *See, e.g., Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008); *see also, e.g., Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1101 (Fed. Cir. 2014) ("If there is no structure in the specification corresponding to the means-plus-function limitation in the claims, the claim will be found invalid as indefinite.") (citation omitted). It is quite common for means-plus-function limitations to fail this requirement in the computer context. In fact, Federal Circuit law is replete with examples of computer-implemented means-plus-function claim limitations that were found indefinite because the specification failed to disclose an algorithm for performing the claimed function.[3]

This indefiniteness issue is particularly suitable for resolution on a Rule 12(b)(6) motion because, in making the indefiniteness determination, the district court must focus on the *actual*

---

[2] ('651, 6:59-61 ("[T]he wireless camera device **110** and the server **140** may be programmatically implemented by using many general purpose hardware components.").)

[3] *See, e.g., Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1338 (Fed. Cir. 2014); *Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1319 (Fed. Cir. 2013); *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1382 (Fed. Cir. 2013); *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012); *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012); *Net MoneyIN, Inc.*, 545 F.3d at 1367; *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333-34 (Fed. Cir. 2008); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340-41 (Fed. Cir. 2008).

disclosures in the written description. A patentee cannot cure the lack of disclosure, for example, through expert testimony that one of ordinary skill in the art would have been able to devise an appropriate algorithm to perform the function. *See, e.g., Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009) ("A patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function."); *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012). In fact, expert testimony is unnecessary and properly excluded when, as here, the specification discloses no algorithm at all. *See Noah Sys.,* 675 F.3d at 1312.

## V. ARGUMENT

### A. THE '651 PATENT'S CLAIMS ARE INVALID AS INDEFINITE

#### 1. "Server Control Means" is a Means-Plus-Function Limitation

Claim language that includes the word "means" and recites a function is presumptively in means-plus-function format and governed by § 112(f). *Net MoneyIN,* 545 F.3d at 1366. Both independent claims recite a "server control means for parsing said recipient code from each said message," which is a means-plus-function claim limitation. The claim language does not recite any sufficient structure capable of performing the claimed parsing function. That structure must therefore be found, if at all, in the '651 patent specification.

#### 2. The Specification Does Not Disclose Any Algorithm for Performing the Function of "Parsing Said Recipient Code from Each Said Message"

The '651 patent fails to disclose a structure for "parsing said recipient code from each said message," as recited in claims 1 and 2. As noted in **Part III** above, the sole disclosure in the specification relating to the claimed function appears in the following sentence:

> <u>At block **544** [of Fig. 20] the server</u> receives a message, <u>parses out</u> information such as account number, image, audio data, date, time, classification, location, and <u>recipient code which is included in the message</u>, saves this in a server memory for future access and in a holding

7

>area designated for this account, and if a path is associated with the recipient code saves the message at that location.

('651, 13:38-44 (emphasis added).)

The excerpt above, the sole disclosure relating to the claimed "parsing," discloses no algorithm for "parsing said recipient code from each said message." It parrots the function recited in the claim by stating that the server "parses out information such as . . . [the] recipient code which is included in the message." (*Id.*) This statement "does not disclose an algorithm—i.e., a step-by-step procedure—for performing the claimed function." *Triton Tech*, 753 F.3d at 1378. It provides "nothing more than a restatement of the function, as recited in the claim," *Finisar*, 523 F.3d at 1340, which is insufficient as a matter of law.

The passage quoted above indicates that "block **544**" of Figure 20 is where the parsing step takes place. ('651, 13:38-41 ("At block **544** the server receives a message, parses out information such . . . recipient code which is included in the message . . . .").) But "block **544**" (shown at right) is simply a black box that identifies the steps of receiving and saving the message. Block **544** makes no mention of the step of parsing the recipient code from the message, let alone describes a step-by-step process for doing so. *See e.g., ePlus,* 700 F.3d at 518 (finding that "black box" labeled "Purchase Orders" did not disclose sufficient structure for performing a "generate purchase orders" function); *Blackboard,* 574 F.3d at 1383 ("The ACM is essentially a black box that performs a recited function. But how it does so is left undisclosed."); *In re TLI*, 2015 WL 627858, at *23 ("Federal Circuit precedent is clear that the corresponding structure accompanying a means-plus-function claim must describe *how* a particular function is

carried out, instead of merely disclosing an abstract structure without further explanation.") (emphasis in original).

Because the specification discloses no structure and algorithm for performing the claimed parsing function, there is no requisite boundary to "cabin the scope of the functional language" in claims 1 and 2. *ePlus,* 700 F. 3d at 519. Claims 1 and 2 are therefore invalid as indefinite.

### 3. Dependent Claims 3-5 Are Likewise Indefinite

Because claims 3-5 depend from independent claim 2, they incorporate the defective means-plus-function limitation and are therefore are also indefinite. *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1356 (Fed. Cir. 2005) (affirming invalidity of all dependent claims upon concluding that the independent claim was indefinite), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120 (2014).

## VI. CONCLUSION

For the foregoing reasons, Instagram LLC respectfully requests that the Court grant Defendant's Motion to Dismiss FO2GO's Complaint because all claims of the '651 patent are invalid as indefinite under 35 U.S.C. § 112.

Dated: April 24, 2015

By: */s/ Steven L. Caponi*
Steven L. Caponi (DE Bar #3484)
**Blank Rome LLP**
1201 N. Market Street
Wilmington, DE 19801
(302) 425-6400
caponi@blankrome.com

*Attorney for Defendant*
*Instagram, LLC*

9