**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT DELAWARE**

| | |
|---|---|
| FO2GO LLC | |
| Plaintiff, | C.A. No. 15-093-RGA |
| v. | JURY TRIAL DEMANDED |
| INSTAGRAM, LLC, | |
| Defendant. | |

**PLAINTIFF FO2GO LLC'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT
INSTAGRAM LLC'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)**

BAYARD, P.A.

OF COUNSEL:

David R. Bennett
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com

Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff FO2GO, LLC*

Dated: June 11, 2015

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...........................................................................................................i

TABLE OF AUTHORITIES ................................................................................................iii

I.      NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

II.     SUMMARY OF THE ARGUMENT ............................................................... 1

III.    STATEMENT OF FACTS ............................................................................... 4

        A.      Background of the Invention .................................................................4

        B.      Claims of the '651 Patent.....................................................................5

        C.      The Claims Disclose the Straightforward and Well-Understood Software
                  Operation of "Parsing"........................................................................6

        D.      Embodiments in the Specification Disclose Sufficient Structures and
                  Algorithms for Parsing the Recipient Code from a Message ...................8

IV.     STATEMENT OF THE LAW........................................................................ 10

        A.      Law of Indefiniteness.........................................................................11

        B.      Means-Plus-Function Language ..........................................................11

        C.      Expert Testimony is Relevant to a Means-Plus-Function Analysis.......13

V.      ARGUMENT .............................................................................................. 13

        A.      Instagram's Motion to Dismiss is Premature in View of the Additional
                  Terms that Must be Considered to Analyze the "Server Control" Term ..............14

        B.      The "Server Control" Term is Not in Means-Plus Function Form Because
                  Each Claim Provides the Necessary Algorithm for "Parsing Said Recipient
                  Code from Each Said Message" ..........................................................15

               1.      The "Server Control" Term Provides Sufficient Structure for
                        "Parsing" to a Person Skilled in the Art Using a Clear and
                        Unambiguous Description of the Term's Operation............................... 15

               2.      The Claims Disclose the Input, Output, and Objective of "Parsing"
                        Sufficient to Disclose a Structure and Thereby Rebut the
                        Presumption of Means-Plus-Function Form ............................................ 17

C.      The Specification Discloses Sufficient Structure Such that the Term is Not
        Indefinite ............................................................................................................18

D.      Dependent Claims 3-5 Are Not Indefinite ...........................................................20

CONCLUSION ........................................................................................................................ 20

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*,
   504 F.3d 1236 (Fed. Cir. 2007)...................................................................... 13

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014)................................................................ passim

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................ 10

*Eon Corp. IP Holdings, LLC v. AT&T Mobility LLC*,
   785 F.3d 616, 624 (Fed. Cir. May 6, 2015) ................................................... 13

*Finisar Corp. v. DirecTV Grp., Inc.*,
   523 F.3d 1323 (Fed. Cir. 2008)................................................................ 12, 18

*Flo Healthcare Solutions, LLC v. Kappos*,
   697 F.3d 1367 (Fed. Cir. 2012)........................................................... 2, 12, 15

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
   607 F.3d 776 (Fed. Cir. 2010)....................................................................... 11

*In re TLI Connc'ns LLC, Patent Litig.*,
   __ F.Supp.3d __, 2015 WL 627858 (E.D. Va. Feb. 6, 2015) ........................ 14

*Keithley v. Homestore.com, Inc.*,
   636 F.Supp.2d 978 (N.D. Cal. 2008) .............................................................. 14

*Linear Tech. Corp. v. Impala Linear Corp.*,
   379 F.3d 1311 (Fed. Cir. 2004)................................................ 12, 13, 15, 17

*Massachusetts Instit. of Tech. v. Abacus Software*,
   462 F.3d 1344 (Fed. Cir. 2006)................................................ 12, 15, 17

*Nautilus, Inc. v. Biosig Instru., Inc.*,
   134 S.Ct. 2120 (2014) ..................................................................................... 11

*Noah Systems, Inc. v. Intuit Inc.*,
   675 F.3d 1302 (Fed. Cir. 2012)....................................................................... 13

*Power Integrations v. Fairchild Semiconductor*,
   711 F.3d 1348 (Fed. Cir. 2013)................................................................ passim

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000)........................................................................................ 11

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
   659 F.3d 1376 (Fed. Cir. 2011)................................................ 12, 13, 18

**Statutes**

35 U.S.C. §112, ¶6............................................................................................ 11

**Rules**

Rule 12(b)(6), Fed.R.Civ.P. ........................................................................................................... 10

Plaintiff FO2GO LLC ("FO2GO") hereby files this Answering Brief in Opposition to Defendant Instagram, LLC's ("Instagram" or "Defendant") Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), (D.I. 9), and in support thereof respectfully shows the following.

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On January 27, 2015, FO2GO filed a complaint against Instagram asserting that Instagram infringed at least claim 2 of U.S. Patent No. 7,173,651 (the "'651 Patent").  There are currently 13 other cases that FO2GO filed in this Court asserting infringement of the '651 Patent.  (C.A. Nos. 15-089-RGA to 15-092, 15-094 to 15-095, and 15-097 to 15-103).  No schedule has been set in this case or any of the related cases.

On April 24, 2015, Instagram filed a Motion to Dismiss contending that the term "server control means for parsing said recipient code from each said message" (the "'Server Control' Term" or "Disputed Term") found in independent claims 1 and 2 is in means-plus-function form and is indefinite.  FO2GO files this opposition to Instagram's motion because the motion is premature, the Disputed Term is not in means-plus-function form, and the Disputed Term is not indefinite.

## II.     SUMMARY OF THE ARGUMENT

As explained below, Instagram's Motion to Dismiss is premature because additional terms need to be construed to address the "Server Control" Term.  Even if the Court were to consider the motion at this time, because the "Server Control" Term is not in means-plus-function form and the specification provides sufficient structure, the Disputed Term is not indefinite.

1.      Instagram's motion is premature at this early stage of the case because numerous claim construction issues require analysis before the Court can decide Instagram's motion.  Instagram cites only two district court cases to support the timing of its motion.  Yet those cases

1

either decided this type of motion after full briefing and argument on the construction of *all* disputed claim terms or waited until summary judgment.  The arguments below demonstrate that there are numerous overlapping construction issues that must be addressed prior to deciding the scope of the Disputed Term.  In addition, with all reasonable inferences drawn in favor of FO2GO for this motion to dismiss, the presumption of validity for the asserted claims is an extremely high hurdle for Instagram to overcome at this early stage of the case.

   2.    Even if the Court were to consider Instagram's motion at this time, the "Server Control" Term is not indefinite because, although it uses the word "means," there is a sufficiently definite structure disclosed in the claims that rebut the presumption of means-plus-function form:

   a.    The presumption of means-plus-function form for the "Server Control" Term is rebutted because the claims contain a sufficiently definite structure to a person of ordinary skill in the art.  *Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367, 1373 (Fed. Cir. 2012).  "Parsing said recipient code from each said message" is simply analyzing the message to identify the recipient code information in the message.  This is a straightforward, one-step operation.  The simplicity of the instruction is further apparent from the claims' requirement that the message include a recipient code and a digital image.  A person skilled in the art who was instructed to construct the message including a recipient code and a digital image (as found earlier in the claims) would understand how to parse the recipient code from that same message.  The limitation is therefore not in means-plus-function format because a person skilled in the art reading the claims would have understood each claim to disclose software for the "parsing" limitation and would have been able to implement such a program to parse the recipient code from a

message.

b.      The presumption is also rebutted because the structure is provided by the claims through a description of the server control's operation, *e.g.*, input, output, and objective. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1299 (Fed. Cir. 2014). The claims disclose the input to the server control (a message including a recipient code and a digital image), a straightforward objective (analyze the message to identify the recipient code), and an output (recipient code). The limitation is a software implementation of a single-step algorithm: parsing a recipient code from a message containing a recipient code and an image. This is a straightforward function performed when a message is receive by the server. *See Power Integrations v. Fairchild Semiconductor*, 711 F.3d 1348, 1365 (Fed. Cir. 2013). The claims therefore disclose a clear and unambiguous description of the server control's operation that weighs heavily in favor of finding sufficient structure in the claim to avoid means-plus-function claiming. *Id.*

3.      Even though the claims are not in means-plus-function form, the specification provides corresponding structure for "parsing said recipient code from each said message" in the form of a flow chart, a diagram, and text. The specification contains a flow chart and text disclosing to a person skilled in the art how to construct and format the message. The disclosure also includes a diagram of a message. The specification also discloses that the contents of the message include appropriate delimiters to indicate message field boundaries. In essence, the specification provides a blueprint of the message format and structure. With the blueprint of the message disclosed, the specification then states that the message should be parsed into its component information. A person skilled in the art would have understood these disclosures to encompass software to parse the recipient code from the message and would have been able to

implement such a software program for a "server control means for parsing said recipient code from each said message."  The "server control" term is not indefinite because the intrinsic evidence informs, with reasonable certainty, those skilled in the art about the scope of the term.

## III.   STATEMENT OF FACTS

### A.   Background of the Invention

The '651 Patent is titled "Apparatus and System for Prompt Digital Photo Delivery and Archival." (Ex. A.)  The inventor is Andrew Knowles, who is the managing member of plaintiff FO2GO LLC.  (D.I. 1 at ¶1.)  The application leading to the '651 Patent was filed on June 2, 1998, and the patent issued on February 6, 2007.  (Ex. A.)

The invention in the '651 Patent relates to digital cameras that "include a radio frequency (RF) transceiver for transmitting digital photos to a remote destination according to users preferences."  (Ex. A at col. 1:13-16.)  At the time of the invention, digital cameras were becoming increasingly popular because the photos did not require processing and an image could be downloaded to a computer to display the photograph or, after being stored on a computer, the image could be forwarded by e-mail or incorporated into other electronic documents, including web pages.  (Ex. A at col. 1:20-32.) The inventor realized that there were several problems with currently available digital cameras.

Downloading the images from a digital camera was complicated, which usually required physically connecting the digital camera to a computer, removing memory from the camera to insert into a computer, or providing an infrared (IR) port for the computer and placing the camera next to the IR port.  (*Id.* at col. 1:33-42.)  These methods of transferring the digital images were confusing and detracted from being able to easily and quickly share the photos.  (*Id.* at col. 1:43-52.) Another issue with these methods is they required a database of images on a local computer, which had limited accessibility and was infrequently backed up.  (*Id.* at col.

1:53-56.)  The inventor therefore realized that there was value to using RF communications to transmit images from a digital camera to a networked image storage and archival system for the digital images.  (*Id.* at col. 1:57-67.)

Another problem that the inventor foresaw was the cost and time to wirelessly transmit images to multiple recipients.  (*Id.* at col. 2:7-16.)  The inventor realized that this problem could be solved by allowing a user to forward an image file with distribution instructions using recipient codes to a central repository that would save the image and automatically distribute the image according to the user's instructions without incurring additional wireless transfer fees.  (*Id.* at col. 2:16-22.)

### B.    Claims of the '651 Patent

The "Server Control" Term at issue in Instagram's motion is found in both independent claims 1 and 2.  Claim 2, which is asserted in the complaint, will be discussed; however, the claim language discussed below with respect to claim 2 is similarly found in claim 1.[1]  Claim 2 is directed to a digital photo processing system comprising a wireless digital camera and a server:

> 2. Digital photo processing system comprising:
>
> at least **one wireless digital camera apparatus**, wherein each said apparatus **includes** a processor, a memory, and a destination address and **one or more previously defined recipient codes stored in said memory**; user interface connected to said processor for at least displaying one or more said recipient codes and receiving signals indicating user selection of a displayed recipient code; a digital camera connected to said processor for capturing

---

[1] *Compare* claim language for "one wireless digital camera apparatus" (Ex. A at col. 15:23 *with* col. 16:8), "one or more previously defined recipient codes stored in said memory" (*id.* at col. 15:25-26 *with* col. 16:10-11), "transmitting a message, including at least said selected recipient code and one said digital image, to said destination address" (*id.* at col. 15:35-37 *with* col. 16:20-22), "a server associated with said destination address and responsive to messages received at said destination address" (*id.* at col. 15:39-41 *with* col. 16:24-26),  "a database storing account configuration data including recipient code data," (*id.* at col. 15:42-43 *with* col. 16:27-28)," and "server control means for parsing said recipient code from each said message" (*id.* at col. 15:44-45 *with* col. 16:29-30),

one or more digital images in response to signals from said user interface; a RF communications device connected to said processor; and processor control means, responsive to signals received from said user interface, for **transmitting a message, including at least said selected recipient code and one said digital image, to said destination address** via said RF communications device; and

**a server associated with said destination address and responsive to messages received at said destination address** from each said wireless digital camera apparatus; **a database storing account configuration data including recipient code data**; a server communication device; and **server control means for parsing said recipient code from each said message, retrieving from said database account configuration data that is associated with said recipient code**, and processing each said message according to said account configuration data.

(Ex. A at col. 16:7-34 (pertinent language emphasized).)  The following is a brief summary of the claim as it relates to the disputed term.  A digital camera apparatus includes one or more previously defined recipient codes stored in memory.  (*Id.* at col. 16:8-11.)  A recipient code is a nickname associated with one or more destination e-mail addresses, IP addresses, phone number, storage destinations, and other archival or distribution locations.  (*Id.* at col. 4:7-14.)  The camera can transmit a message that includes at least a recipient code and a digital image to a destination address.  (*Id.* at col. 16:20-23.)  A server at the destination address receives the message.  (*Id.* at col. 16:24-25.)  The server control on the server, which has recipient code data stored in a database, parses the recipient code from the message and retrieves account configuration data associated with the recipient code.  (*Id.* at col. 16:27-30.)

## C.  The Claims Disclose the Straightforward and Well-Understood Software Operation of "Parsing"

"Parsing," as used in the claim language, is a well understood software operation to a person skilled in the art.  (Barnett Decl. at ¶10; Ex. B: The New Shorter Oxford English Dictionary on Historical Principals, Vol. 2 N-Z, at 2106 (1993) ("parse" – "*Computing* Analyse

(a string) into syntactic components, esp. to test conformability to given grammar.").)   The phrase "parsing said recipient code from each said message" is a straightforward description of a specific operation and is a one-step algorithm that instruct a person skilled in the art how to implement the "parsing" function: when a message is received, the recipient code is parsed from the message.   (Barnett Decl. at ¶¶10-11.)   The simplicity of the one-step algorithm disclosed in the claims is demonstrated by two of the most well-known languages for creating and sending messages at the time of the invention.   (Barnett Decl. at ¶11.)   ASP and PHP had a one-step, single-line process to retrieve the "recipient code" from the message when posted over the HTTP protocol.      (*Id.*).      An ASP programmer would use a single line, "Request.Form("Recipient_Code")," for the recipient code to be parsed from the message.   (*Id.*)   Similarly, a PHP programmer would write "$_POST("Recipient_Code")" for the recipient code to be parsed from the message.   (*Id.*)   The "parsing" term in the claim therefore provides a sufficiently definite structure to a person skilled in the art for the algorithm to parse the recipient code from the message.   (*Id.* at ¶¶10-11.)   No further instructions or description is required.   (*Id.* at ¶¶10-11, 13.)

Further explanation of the operation of "parsing said recipient code from each said message" is disclosed elsewhere in the claims through the disclosure of the contents of the message that are known by both the digital camera apparatus and the server.   (*Id.* at ¶12.)   The claims disclose to a person skilled in the art that a message, including a recipient code and digital image, is transmitted to a server at a destination address.   (*Id.*; Ex. A at 16:20-26.)   The recipient code is stored both on the digital camera and the server.   (Barnett Decl. at ¶12; Ex. A at 16:10-11, 27-28.)   The claims also disclose to the skilled artisan that the recipient code is parsed from the message, and account configuration data associated with the recipient code is retrieved from

the server.  (*Id.*)  With the recipient code known in advance by both the digital camera and the server, the message including a recipient code, and the server parsing the recipient code from the message to retrieve data associated with the recipient code, a person skilled in the art would have understood the claims to disclose a software implementation for "parsing said recipient code from each said message" and would have been able to implement such a program due to its straightforward function.  (Barnett Decl. at ¶¶12-15.)

Importantly, Defendant does not contest that the earlier claim limitation directed to a message with certain contents is definite.  (*See* Ex. A at col. 16:20-22 ("a message, including at least said selected recipient code and one said digital image").)  In other words, Defendant does not dispute that a person skilled in the art would understand how to implement a software program to create the message.  Then the instruction of "parsing said recipient code from each said message" is a straightforward operation to the skilled artisan who created the message, because the format and contents of the message are known and the message can be analyzed to extract information on the recipient code.  (Barnett Decl. at ¶¶12-14.)  Because a person skilled in the art could implement a software program to create the message that includes a recipient code and a digital image, a person skilled in the art would have been able to implement a software program to parse the recipient code from that same message.  (*Id.* at ¶15.)

**D.     Embodiments in the Specification Disclose Sufficient Structures and Algorithms for Parsing the Recipient Code from a Message**

The specification discloses embodiments of digital camera/server systems sending messages containing at least a recipient code and a digital image, and parsing the recipient code from the message.

In one embodiment, Figure 16 and its accompanying text disclose a process flow chart for constructing a message including a recipient code.  (Ex. A at Fig. 16, col. 6:5-6; col. 11:43 –

col. 12:5.)  The message has a header, recipient code(s), an image, other potential information such as account ID and audio recordings, and an end of message indicator.  (*Id.*)  Appropriate delimiters are added within the message to indicate message field boundaries, and the current message length field is updated, in a manner which is well known in the art.  (*Id*. at col. 12:2-5.) With disclosures as to the structure and contents of the message, parsing the recipient code from the message is a straightforward operation of finding the message boundaries for the recipient code information and parsing the recipient code from the message.  (Barnett Decl. at ¶17.)

In another embodiment, Figure 19 shows an example of a "data format for data transmitted from the wireless camera device to the server," *i.e.*, an example of a message format containing a recipient code and image, which can result from the flow chart in Figure 16:



(Ex. A at col. 6:11-13, 11:51-53; Fig. 19.)  The specification discloses that additional information can be included within the message such as account number, date, time, classification, and location.  (Ex. A at col. 13:38-41.)  A person skilled in the art provided with this disclosure would know how to implement a software program to create a message in this format and would also know how to implement a software program to parse the recipient code from the message.  (Barnett Decl. at ¶18.)

The specification discloses another embodiment in which the digital camera and the server both have tables of the recipient codes.  For example, Figure 3 is a representative configuration table containing recipient code information that is found both on the digital camera and the server.  (Ex. A at col. 7:23-26, 32-35.)  When the structure of the message is known by both the digital camera and server, and both the digital camera and server have information on

9

the recipient codes that can be within the message, the specification provides sufficient disclosures of an algorithm for a person skilled in the art to implement a software program to parse the recipient code from a message.  (Barnett Decl. at ¶19.)

After the specification describes how the message is created, the structure of the message, and how the information on recipient codes is stored on both the digital camera and server, the specification then explains that when the server receives the message and parses the information including the recipient code from the message.  (Ex. A at col. 13:38-44; Fig 20 at block 544.) There is no further specificity required to provide sufficient instructions to a person of ordinary skill in the art regarding how to parse the recipient code from the message.  (Barnett Decl. at ¶21.)  "Parsing said recipient code from each said message" is a clear and unambiguous description of the server control's operation to a person skilled in the art.  (*Id.*)  In the main programming languages at the time of the invention, the parsing function was a basic one line operation.  (*Id.* at ¶¶20, 11.)  When a message with a known structure is received and it is known where the recipient code is found within the message, the limitation is a straightforward one step instruction:  parse the recipient code from the message.  (*Id.*)  In sum, because the specification discloses the structure of the message and how to put it together, the specification likewise provides sufficient disclosures to a person skilled in the art to provide a software program to analyze the message to identify the recipient code.  (*Id.* at ¶22)

## IV.    STATEMENT OF THE LAW

The standard for ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is whether, under any plausible reading of the pleadings, the plaintiff would be entitled to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When evaluating such a motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 150 (2000).

### A.      Law of Indefiniteness

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."   *Nautilus, Inc. v. Biosig Instru., Inc.*, 134 S.Ct. 2120, 2124 (2014).  The certainty required "is not greater than is reasonable, having regard to [the patent's] subject matter."   *Id.* at 2129.  Definiteness is measured from the viewpoint of a person skilled in the art at the time the patent was filed.[2]   *Id*. at 2128.   The standard for definiteness "take[s] into account the inherent limitations of language," and "[s]ome modicum of uncertainty… is the price of ensuring the appropriate incentives for innovation."   *Id.* (citations and quotes removed).   To prove indefiniteness, an accused infringer must demonstrate that a claim is not definite by clear and convincing evidence.  *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010); *see Nautilus*, 132 S.Ct. at 2131 n.10.

### B.      Means-Plus-Function Language

Whether a claim term is in means-plus-function format is a question of law.  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1296 (Fed. Cir. 2014).  Under 35 U.S.C. §112, ¶6:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

A means-plus-function analysis is a two-step process.  *Apple*, 757 F.3d at 1296.  First, the Court determines "if the claim limitation is drafted in means-plus-function format."  *Id.*   A claim limitation that uses the term "means" invokes a rebuttable presumption that the term is written in

---

[2] Because of this standard, references in this brief to a "person skilled in the art," or similar term, refer to a person skilled in the art at the time the patent was filed.

means-plus-function form.  *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319 (Fed. Cir. 2004).  The presumption is rebutted when a claim recites a "sufficient structure, material, or acts within the claim itself to perform entirely the recited function."  *Flo Healthcare*, 697 F.3d at 1373.  For example, a term "in combination with [ ] a clear and unambiguous description of the [term's] operation weighs heavily in favor [of] finding sufficient structure to avoid means-plus-function claiming."  *Power Integrations*, 711 F.3d at 1365.  The Court must therefore "construe the claim limitation to decide if it connotes 'sufficiently definite structure' to a person of ordinary skill in the art" to avoid means-plus-function form.  *Apple*, 757 F.3d at 1296.  Second, "if the limitation is in means-plus-function format, [the Court] must specifically review the specification for 'corresponding structure.'"  *Id.* at 1298.

In the art of computer-implemented inventions, the "structure" to a person of ordinary skill in the art may differ from traditional mechanical structures.  *Id.*  "Looking for traditional 'physical structure' in a computer software claim is fruitless because software does not contain physical structures."  *Id.*  For computer software, a sufficient structure requires the disclosure of an algorithm.  *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1384 (Fed. Cir. 2011).  Algorithm has a broad meaning and can be described in "any understandable terms, including . . ., in prose, or as a flow chart, or in any other manner that provides sufficient structure."  *Typhoon Touch*, 659 F.3d at 1385 (*quoting Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008)).  "Structure may also be provided by describing the claim limitation's operation...."  *Apple*, 757 F.3d at 1299.  For example, describing the operation by disclosing an input, output, and objective is sufficient to disclose structure.  *Massachusetts Instit. of Tech. v. Abacus Software*, 462 F.3d 1344, 1356 (Fed. Cir. 2006); *Apple*, 757 F.3d at 1299; *Linear*, 379 F.3d at 1320-1321.  Even if a variety of structures could be used to provide the claimed function,

the term is definite if "the function recited is sufficiently clear, and definitely described, to suggest to the ordinarily skilled artisan a defined class of structures." *Power Integration*, 711 F.3d at 1365. In sum, "[t]he patent need only disclose sufficient structure for a person of skill in the field to provide or implement an operative software program for the specified function." *Apple*, 757 F.3d at 1298 (*quoting Typhoon Touch*, 659 F.3d at 1385).

### C.   Expert Testimony is Relevant to a Means-Plus-Function Analysis

Although Instagram implies that expert testimony is not relevant to a means-plus-function analysis, the Federal Circuit has held that expert testimony is relevant to a means-plus-function determination and has considered such testimony, like in any claim construction issue. *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F. 3d 1354, 1358 (Fed. Cir. 2004); *Linear*, 379 F.3d at 1320. Furthermore, expert testimony is particularly relevant where, as in this case, the claims and the specification disclose an algorithm. *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1245 (Fed. Cir. 2007); *Noah Systems, Inc. v. Intuit Inc.*, 675 F.3d 1302, 1313 (Fed. Cir. 2012); *also Eon Corp. IP Holdings, LLC v. AT&T Mobility LLC*, 785 F.3d 616, 624 (Fed. Cir. 2015).

## V.   ARGUMENT

Analysis of Defendant's motion is premature at this time due to numerous claim construction issues related to the Disputed Term, the presumption of validity with all reasonable inferences drawn in favor of FO2GO. However, even if the Court were to consider the motion at this time, the claims and the specification separately provide a sufficient structure to a person skilled in the art as to the scope of the term "server control means for parsing said recipient code from each said message." Because the claim language contains a sufficiently definite structure to a person of ordinary skill in the art, the presumption of a means-plus-function construction is rebutted despite the use of the term "means." Furthermore, the specification discloses a

13

sufficiently definite structure to allow a person skilled in the art to provide a program to perform

the operation.  The "Server Control" Term is therefore not indefinite because intrinsic evidence

informs, with reasonable certainty, those skilled in the art about the scope of the term.

### A.    Instagram's Motion to Dismiss is Premature in View of the Additional Terms that Must be Considered to Analyze the "Server Control" Term

None of Instagram's cited precedent supports addressing the means-plus-function and

indefiniteness issues in Instagram's motion at this early stage of the case.  The cases relied on by

Instagram either addressed the issue after briefing all disputed claims terms, or waited until

summary judgment.[3]  That is because a means-plus-function analysis involves the analysis of the

Disputed Term in the context of the claim, which would involve construction of other terms.  As

explained below, the "Server Control" Term requires, at a minimum, consideration of the scope

of the terms "transmitting a message, including at least said selected recipient code and one said

digital image, to said destination address," "a server associated with said destination address and

responsive to messages received at said destination address," "a database storing account

configuration data including recipient code data," and "retrieving from said database account

configuration data that is associated with said recipient code."  These terms help explain the

scope and meaning of the "Server Control" Term, demonstrate that the term is not in means-plus-

function form, and further show that the "Server Control" Term is not indefinite.  Furthermore,

in view of the presumption of validity and with all reasonable inferences drawn in favor of

FO2GO, it is not feasible for Instagram to overcome its heavy burden of proving invalidity at

---

[3]  Instagram relied on two district court cases.  In *In re TLI Connc'ns LLC, Patent Litig.*, __ F. Supp. 3d __, 2015 WL 627858 (E.D. Va. Feb. 6, 2015), the Motion to Dismiss was only addressed after more than 110 pages of briefing (excluding exhibits) addressing the motion to dismiss *plus the construction of all disputed claim terms*, and almost eight hours of oral argument, including supplemental oral argument.  In *Keithley v. Homestore.com, Inc.*, 636 F.Supp.2d 978, 995 (N.D. Cal. 2008), the issue was addressed on summary judgment, not at the pleading stage.

this stage of the case.  Instagram's motion should therefore be denied as premature.

**B.     The "Server Control" Term is Not in Means-Plus Function Form Because Each Claim Provides the Necessary Algorithm for "Parsing Said Recipient Code from Each Said Message"**

Even if the Court were to consider Instagram's motion, the motion is based on the incorrect position that the "server control" term is in means-plus-function form.  Instagram acknowledges that the use of the term "means" invokes a *rebuttable* presumption that the "Server Control" Term is written in means-plus-function form.  *Linear Tech.*, 379 F.3d at 1319.  In this case, the claims recite sufficient structure or acts to perform the recited function, and so the presumption is rebutted.  *Flo Healthcare*, 697 F.3d at 1373.  There is no dispute that the structure of the "Server Control" Term is software associated with the "server."  There are therefore two ways in which the claims have sufficient disclosures to rebut the presumption. First, the "parsing" phrase alone provides sufficient structure because it provides a clear and unambiguous description of the term's operation.  *Power Integrations*, 711 F.3d 1365.  Second, the claims provide an input, objective, and output sufficient to disclose structure.  *Massachusetts Instit.*, 462 F.3d at 1356; *Apple*, 757 F.3d at 1299; *Linear Tech.*, 379 F.3d at 1320-1321. Because the term is not in means-plus-function form and Instagram's Motion to Dismiss is predicated on the term being in means-plus-function form, Instagram's Motion to Dismiss should be denied.

**1.     The "Server Control" Term Provides Sufficient Structure for "Parsing" to a Person Skilled in the Art Using a Clear and Unambiguous Description of the Term's Operation**

The claims provide a sufficient structure for the "server control means for parsing said recipient code from each said message" to overcome the means-plus-function presumption. When a term provides a straightforward function that is a clear and unambiguous description of the term's operation, the disclosure weighs heavily against means-plus-function claiming.

*Power Integrations*, 711 F.3d 1365.  As explained above, "parsing" information from a message is a clear and unambiguous operation to a person skilled in the art and is a one-step algorithm: analyzing the message to identify the recipient code.  (Barnett Decl. at ¶¶9-11.)  The specificity of the instruction is demonstrated by the two most well-known programming languages for creating and sending messages at the time of the invention, which each used a basic, single line instruction to parse information from a message.  (*Id.* at ¶11.)  Because of the straightforward function, the parsing phrase alone discloses a sufficiently structure for the term.  *See Power Integrations*, 711 F.3d at 1365 (comparing magnitudes of two signals is a straightforward function that does not require further description).

The claims also provide additional instructions to a person skilled in the art to further disclose to a skilled artisan the scope of "parsing said recipient code from each said message." The claims describe the contents of the message (recipient code and digital image), and that both the sender (digital camera apparatus) and the receiver (server) have the recipient codes before the message is sent (digital camera has the recipient code in memory and the server has the recipient code in a database).  (Ex. A at col. 16:10-11, 20-22, 27-30.)  Defendant does not contest that a skilled artisan would have been able to provide a program to construct and transmit the claimed message.  A person skilled in the art who is provided with sufficient instructions to construct such a message would likewise have sufficient instructions to be able to implement a program for "parsing" the recipient code from that same message.  (Barnett Decl. at ¶¶12-15.)

Because of the specificity and limited scope of the "parsing" task, the "parsing" language provides sufficient instructions to perform the required function, particularly in view of the disclosed contents of the message in the claim.  (Barnett Decl. at ¶¶9-10.)  No further instructions or explanations are required to explain "parsing said recipient code from each said

16

message" to a person skilled in the art.  (*Id.* at ¶13.)  Because the "parsing said recipient code from each said message" provides sufficient instructions to a person skilled in the art, the limitation should not be construed to be in means-plus-function form and is sufficiently definite.

### 2. The Claims Disclose the Input, Output, and Objective of "Parsing" Sufficient to Disclose a Structure and Thereby Rebut the Presumption of Means-Plus-Function Form

The claims also rebut the presumption of means-plus-function form by describing the operation of "parsing said recipient code from each said message" through disclosing an input, objective, and output sufficient to disclose the structure.  *Massachusetts Instit.*, 462 F.3d at 1356; *Apple*, 757 F.3d at 1299; *Linear Tech.*, 379 F.3d at 1320-1321.  The claim discloses the input into the server control: a message including a recipient code and a digital image.  (Barnett Decl. at ¶13; Ex. A at Col. 16:20-23, 27-28.)  The claim discloses the straightforward operation performed by the server control: parsing the recipient code from the message.  (Barnett Decl. at ¶13.)  "Parsing" is a defined operation in the art.  (*Id.* at ¶10.)  The claims disclose the output of the parsing: the recipient code.  (*Id.* at ¶13.)  These instructions sufficiently disclose to a skilled artisan how to parse the recipient code from the message and no further instructions would have been required.  (*Id.*)  A person skilled in the art would therefore have been able to provide an operative software program for the specified function.  (*Id.* at ¶¶13-14.)  Because the input/operation/output is sufficiently disclosed in the claim, the presumption of means-plus-function form is rebutted.

Defendant's indefiniteness argument is predicated on the Court finding the term to be in means-plus-function form.  Because the presumption of means-plus-function is rebutted, Defendant has no support for its indefiniteness argument.  The Court must therefore deny Defendant's motion.  Regardless, for the reasons set forth above, the claim informs, with reasonable certainty, a person skilled in the art at the time the patent was filed of the structure

and scope of the "server control" term such that a skilled artisan could provide a software program to implement the functionality.  (*Id.* at ¶15).

### C.     The Specification Discloses Sufficient Structure Such that the Term is Not Indefinite

Defendant's analysis of the specification focuses solely on the term "parsing" while disregarding the detailed blueprint in the specification for the message to be parsed.  Defendant's analysis is far too narrow and inconsistent with what the law views as a sufficient algorithm. Algorithm has a broad meaning and can be described using text, diagrams, flow charts, or "any other manner that provide sufficient structure."  *Typhoon Touch*, 659 F.3d at 1385 (*quoting Finisar Corp.*, 523 F.3d at 1340).  This requires more than just looking for the word "parsing" in the specification and requires analyzing parsing in the context of the message to be parsed.  Here, the specification discloses the parts of the message and how the message is constructed thereby providing a person skilled in the art with a blueprint for the message, which is a sufficient algorithm to parse the "recipient code" from the message.  (Barnett Decl. at ¶¶16-22).  With these disclosures, "parsing" has a sufficiently definite structure for a person skilled in the art to provide an operative software program for the parsing function.  *Apple*, 75 F.3d at 1298-99; *Typhoon Touch*, 659 F.3d at 1385.

As explained above, the specification provides embodiments describing how to construct a message and the format of a message.  (*Supra* §III(D).)  The specification provides a flow chart disclosing to a person skilled in the art how to construct a message that includes a recipient code. (Ex. A at Fig. 16, col. 6:5-6; col. 11:43 – col. 12:5.)  The embodiments provide examples of what can be included within the message and explains that the parts of the message are separated with appropriate delimiters to indicate message field boundaries, which would be "well known in the

18

art." (*Id*. at col. 12:2-5).  The specification also provides a diagram of the message containing

the recipient and image, like in the claims:



(Ex. A at col. 6:11-13, 11:51-53; Fig. 19.)  Again, Defendant does not contest in its motion that a

person skilled in the art is provided with sufficient information in the specification to provide a

program to construct the message and would further understand the format of the message.

    The specification also discloses that the server has tables of recipient codes before

receiving the message.  (Ex. A at col. 7:23-26, 32-35; Fig. 3.)  After the message is constructed,

the specification states that the message is sent to the server and the server receiving the message

"parses out information" from the message, including the recipient code.  (Ex. A at col. 13:38-

44.)  With these instructions, flow chart, and diagram explaining the contents of the message and

how the message is constructed, "parsing said recipient code from each said message" is a

straightforward, sufficiently definite algorithm to a person skilled in the art.  (Barnett Decl. at

¶¶21-22.)  The specification therefore informs, with reasonable certainty, a person skilled in the

art of the structure and scope of the "server control" term such that a skilled artisan could

provide a software program to implement the functionality.  (*Id.*)

    In sum, a person skilled in the art at the time the patent was filed who is provided with a

flow chart of how to create a message, prose explaining how to create the message, disclosures

as to the content of the message, and a diagram of a message, would be provided with an

algorithm sufficient to provide a program for a "server control means for parsing said recipient

code from each said message."  The term therefore reasonably informs a person skilled in the art

at the time of the filing of the patent as to the sufficiently definite scope of the limitation.

(Barnett Decl. at ¶22.)  Defendant has therefore failed to demonstrate by clear and convincing evidence that the "server control" term in claims 1 and 2 is indefinite.

### D.  Dependent Claims 3-5 Are Not Indefinite

Instagram provides no separate argument for indefiniteness on dependent claims 3-5. The Court should therefore not find dependent claims 3-5 indefinite because claim 2, from which claims 3-5 depend, is not indefinite.

## CONCLUSION

For the foregoing reasons, FO2GO respectfully requests that this Court deny Defendant Instagram, LLC's Motion to Dismiss because the claims of the '651 patent are not indefinite or, at a minimum, deny the motion as premature.

June 11, 2015

OF COUNSEL:

David R. Bennett
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com

BAYARD, P.A.

 /s/ Stephen B. Brauerman
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff FO2GO, LLC*